IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

J & J SPORTS PRODUCTIONS, INC.                              PLAINTIFF

V.                    CASE NO. 5:16-CV-5243

MIRANDA FERNADO a/k/a
FERNANDO MIRANDA, individually and d/b/a
MARIACHI'S GRILL a/k/a
MARIACHI'S GRILL & CANTINA                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant Fernando Miranda's Motion to Dismiss (Doc. 8) and Brief in Support (Doc. 9), Plaintiff J & J Sports Productions, Inc.'s ("J & J") Statement in Opposition (Doc. 11), and Mr. Miranda's Reply (Doc. 13). For the reasons given below, Mr. Miranda's Motion is **GRANTED**, and J & J's Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.

### I. BACKGROUND

On September 12, 2016, J & J initiated this case by filing its Complaint against Mr. Miranda. See Doc. 1. In its Complaint, J & J alleges that it owns exclusive commercial distribution rights in a program televising the September 14, 2013 fight between Floyd Mayweather, Jr. and Saul Alvarez ("the Program"), and that on the day of the fight, Mr. Miranda caused the Program to be intercepted and published without J & J's permission at Mariachi's Grill in Fayetteville, Arkansas. See Doc. 1, ¶¶ 9–19. J & J's Complaint sets forth three separate counts against Mr. Miranda, for violations of 47 U.S.C. §§ 605 and 553, and the common-law tort of conversion.

1

Mr. Miranda has moved to dismiss J & J's Complaint under Fed. R. Civ. P. 12(b)(4) and 12(b)(5), on the grounds that J & J failed to provide sufficient service of process to Mr. Miranda within the deadline imposed by Fed. R. Civ. P. 4(m), which is 90 days from the date of the Complaint's filing.  Mr. Miranda is aware of only one attempt at service within the 90-day window, and he contends that this attempt was fatally deficient in two independent ways—first, that the Complaint was not served upon him, his dwelling, or his agent as required by Rule 4(e), and second, that the Complaint was not accompanied by a summons as required by Rule 4(c)(1).  Mr. Miranda argues furthermore that these deficiencies were not occasioned by good cause or excusable neglect, and that therefore an extension of the deadline for service is unwarranted.

## II.  LEGAL STANDARD

Since Mr. Miranda's objection goes not to the form of process or content of the summons, but rather to the manner, method, or lack of service itself, his Motion is properly brought under Rule 12(b)(5) rather than Rule 12(b)(4).  5B Wright & Miller, Federal Practice and Procedure: Civil 3d § 1353 (3d ed. 2004).  "In a Rule 12(b)(5) motion, the party making the service has the burden of demonstrating validity when an objection to the service is made."  *Roberts v. USCC Payroll Corp.*, 2009 WL 88563, at *1 (N.D. Iowa Jan 13, 2009) (internal quotation marks omitted).  If a defendant is not served within the time provided by the Federal Rules of Civil Procedure, then the Court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court *must* extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m) (emphasis added).  "If plaintiff fails to show good cause, the court still *may* extend the time for service rather

than dismiss the case without prejudice." *Kurka v. Iowa Cnty., Iowa*, 628 F.3d 953, 957 (8th Cir. 2010) (emphasis in original). "To warrant a discretionary extension, the plaintiff must establish excusable neglect." *Id.*

### III. DISCUSSION

J & J concedes that a copy of the summons was not served with the Complaint, but J & J does not concede that it failed to serve the Complaint itself upon Mr. Miranda, his dwelling, or his agent as required by Rule 4(e). *See* Doc. 11, pp. 2–3. However, the only evidence J & J offers to meet its burden on this latter point is the Affidavit of Service (Doc. 7). J & J argues that this is all it needs, because "a signed return of service is prima facie evidence of valid service and sufficient in and of itself, which can only be overcome by strong and convincing evidence." *See* Doc. 11, p. 3 (quoting *Datacom Sys., Inc. v. JDL Digital Sys., Inc.*, 2009 WL 315720, at *2 (W.D. Ark. Feb. 6, 2009) and *Transamerica Life Ins. Co. v. IMG Mktg., Inc.*, 2011 WL 861130, at *2 (E.D. Ark. Mar. 10, 2011)) (internal alterations, citations, and quotation marks omitted). But while J & J has correctly stated the general principle so far as it goes, common sense dictates that it weighs in the opposite direction when the very face of the Affidavit of Service itself plainly indicates that service was invalid. That is the case here, because the Affidavit of Service states that the Complaint was served upon somebody named Armando Lopez (not Mr. Miranda) at Mariachi's Grill (not Mr. Miranda's dwelling), and provides no reason to believe that Mr. Lopez is Mr. Miranda's agent who is authorized to receive service of process on Mr. Miranda's behalf.[1] *See* Doc. 7. In sum, as to each of Mr. Miranda's objections, J & J has

---

[1] The Affidavit of Service identifies Mr. Lopez as an "Asst. Manager" at Mariachi's Grill. *See* Doc. 7. Mr. Miranda disagrees with this characterization, contending that Mr. Lopez is not a manager at Mariachi's, but rather merely a server. *See* Doc. 9, p. 2 n.2. The

3

failed to meet its burden of showing that valid service was accomplished within the deadline set by the Federal Rules of Civil Procedure.

Thus, the Court must determine whether there is good cause for J & J's deficient service. The Eighth Circuit has explained:

> A showing of good cause requires at least excusable neglect—good faith and some reasonable basis for noncompliance with the rules. Good cause is likely (but not always) to be found when (1) the plaintiff's failure to complete service in a timely fashion is a result of the conduct of a third person, typically the process server, (2) the defendant has evaded service of the process or engaged in misleading conduct, (3) the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or (4) the plaintiff is proceeding pro se or in forma pauperis. At its core, however, the standard of good cause, like many others in the law, is necessarily amorphous. Whether or not it has been satisfied is largely dependent upon the facts of each individual case. It is for this very reason that such a determination is entrusted to the sound and considerable discretion of the district court in the first instance.

*Kurka*, 628 F.3d at 957 (internal alterations, quotation marks, and citations omitted).

Here, the second and fourth circumstances are indisputably absent. J & J argues, though, that the first and third circumstances are present, at least to some extent. While the Court agrees that the process server shares *some* blame for J & J's failure to complete service, the Court believes that under the facts of this particular case, the ultimate responsibility for that failure rests on J & J's shoulders, such that good cause does not exist here.

Counsel for J & J declares that on December 9, 2016, his office "instructed the process server herein to serve all initiating papers, including the Summons and Complaint, on Defendant." (Doc. 11-1, ¶ 4). Since the Complaint was filed on September

---

Court does not think it makes any difference either way, because Mariachi's Grill is not a separate Defendant in this case; the sole named Defendant in this case is Mr. Miranda, in his personal capacity, *doing business as* Mariachi's Grill.

4

12 of that year, and Rule 4(m) imposes a 90-day deadline for service, this means J & J did not even *begin* to attempt service until a mere 2 days before the deadline to complete that process—a very risky delay for which J & J offers no explanation. If J & J had been even a little more proactive about serving process, it would have allowed itself ample time to shore up any deficiencies in service that arose from confusion or error on the part of its process server. But instead, J & J chose to reduce its margin for error to zero. In the absence of any explanation for J & J's decision to wait until the last moment, the Court finds that choosing to play with fire does not, by itself, constitute good cause for being burned.

However, as noted above, the Court, in its discretion, may extend the deadline for service even in the absence of good cause if it finds that J & J's insufficient service of process was the result of excusable neglect. In this context, excusable neglect is "an elastic concept," which depends on the equities arising from the particular facts at bar. *See Kurka*, 628 F.3d at 959. The Eighth Circuit instructs that in determining whether neglect was excusable, four factors are especially important: "(1) the possibility of prejudice to the defendant, (2) the length of the delay and the potential impact on judicial proceedings, (3) the reason for the delay, including whether the delay was within the party's reasonable control, and (4) whether the party acted in good faith." *Id.* But importantly, "[t]hese factors do not bear equal weight as the reason for delay is generally a key factor in the analysis." *Id.* Here, although the Court has no reason to believe that J & J acted in bad faith, that Mr. Miranda has suffered anything more than minimal prejudice from the insufficient service of process, or that extending the deadline would negatively impact judicial proceedings, the Court believes it is very significant that, as

5

previously stated, J & J has offered no reason at all for why it dallied so long before attempting service.

Additionally, the Court feels it must address an elephant in the room: the statute(s) of limitations. Although none of the parties have explicitly mentioned this issue, it appears likely that more than four months ago, and only two days after the Complaint was filed, the statute of limitations expired on J & J's conversion claim. *See Bragg v. Morgan*, 2000 WL 1456929, at *1 (Ark. Ct. App. Sept. 27, 2000) ("The statute of limitations for replevin or conversion is three years.") (citing Ark. Code Ann. § 16-56-105). And it seems plausible that this occurred simultaneously with the expiration of the governing statute of limitations on J & J's two federal claims, although the law appears uncertain on this point. *See, e.g., Comcast of Ill. X v. Multi-Vision Elects., Inc.*, 491 F.3d 938, 943 (8th Cir. 2007) (observing that 47 U.S.C. § 553 lacks its own statute of limitations, and assuming without deciding that it is governed by the Copyright Act's three-year statute of limitations). To be clear, the Court is not definitively holding here that any statutes of limitations have expired, as that issue is not squarely before it. Rather, the Court is simply taking into account, as it believes it must, that a dismissal without prejudice has the potential to work dispositive harm on J & J's claims.

Under such circumstances, "the district court must weigh the effect on the party requesting the extension against the prejudice to the defendant." *Kurka*, 628 F.3d at 959. "However, the running of the statute of limitations does not require the district court to extend time for service of process." *Id.* (internal quotation marks omitted). The Court can easily imagine scenarios in which it could find that the running of the statute of limitations mitigates heavily in favor of granting a discretionary extension. But those scenarios would

6

all involve the plaintiff having provided *some* reason for why it waited so long to attempt service: perhaps a strong reason such as a medical emergency, or even a weak reason such as a calendaring error or innocent confusion about when the service deadline or applicable statutes of limitations would expire, for example. But the Court does not see how neglect can be excusable if no excuse is offered. The Court presumes, from the timing of the Complaint's filing relative to the running of the statute, that J & J was well aware that it was right up against the statute of limitations and that accordingly, timely service of process was especially urgent here. Yet, J & J procrastinated for no apparent reason, gambling that it would get it right on the first and only attempt. That is certainly neglect, but it is not excusable.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Fernando Miranda's Motion to Dismiss (Doc. 8) is **GRANTED**, and Plaintiff J & J Sports Productions, Inc.'s Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** on this 28th day of February, 2017.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE